UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:20-cv-313-MOC-WCM

| | |
|---|---|
| **DONTE D. SHINE, pro se,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | **ORDER** |
| ) | |
| **CITY OF ASHEVILLE, et al.,** ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss and/or Motion for Summary Judgment, filed by Defendants City of Asheville and Travis Barkley. (Doc. No. 19). Also pending is Defendants' Motion to Strike Plaintiff's Surreply, (Doc. No. 32), and Plaintiff's Motion for Leave to Amend, (Doc. No. 35).

Defendants have filed both a motion to dismiss and/or a motion for summary judgment as to various claims by Plaintiff. Because the parties have not engaged in discovery, the Court finds that the motion for summary judgment is premature, and the Court will not entertain it. Therefore, the Court will construe Defendants' motion as a motion to dismiss.

Construing Defendants' motion as a motion to dismiss and applying the appropriate standard of review, the Court concludes that Defendants' motion should be **GRANTED** and this matter will be **DISMISSED**. Therefore, Defendants' Motion to Strike Plaintiff's Surreply and Plaintiff's Motion for Leave to Amend will be **DENIED** as **MOOT**.

I. BACKGROUND

According to Plaintiff's Complaint, on August 3, 2018, Plaintiff called police to an apartment located at 50 Wilbar Avenue in Asheville, North Carolina, claiming his roommate was

1

holding him at knifepoint. (Doc. No. 1 at ¶¶ 15–17). Asheville Police Department ("APD") officers responded to the call shortly before 10:00 a.m. and proceeded to interview both Plaintiff and his roommate, Kerri Buckner. (Id. at ¶¶ 20–21). Officers did not discover evidence of an assault. During the investigation, however, officers learned that, approximately a month prior, Plaintiff took a sexually explicit photograph of Ms. Buckner while she was sleeping, and that Plaintiff had threatened to release the photo. (Doc. No. 19-1 at 3; Doc. No. 19-2). Officers also came to understand that Plaintiff had threatened to release the image to coerce the roommate. (Id.). The roommate provided officers with evidence of these claims in the form of Facebook messages from Plaintiff containing the image and threats. (Id.). Included among the messages was a statement by Plaintiff suggesting he had sexual intercourse with Ms. Buckner without her consent while she was unconscious. (Id.). Plaintiff's roommate also informed officers that Plaintiff, a convicted felon, possessed a "shotgun." (Id.). The entirety of the officers' exchange with Ms. Buckner was captured on body-worn cameras. (Doc. No. 19-2).

Based on the results of their investigation, Plaintiff was arrested and charged with violations of N.C. GEN. STAT. § 14-202, Secret Peeping, and N.C. GEN. STAT. § 14-196.3, Cyberstalking. (Doc. No. 19-3). Officers seized Plaintiff's phone at the time of arrest as likely to contain evidence of the crime charged. (Doc. No. 19-1 at 3). The roommate also informed officers that Plaintiff's laptop computer, which Plaintiff sometimes used to access Facebook, was located in the apartment, and that Plaintiff's vehicle, a tan/gold 2007 Saturn, was parked outside the apartment. (Id.). Following Plaintiff's arrest, Detective Barkley, based on information supplied by the arresting officers, applied for and received a warrant from a neutral magistrate to search Plaintiff's vehicle, property inside the apartment, and the electronic devices seized at the time of arrest. (Doc. No. 1, ¶ 33, 34; Doc. No. 19-1 at 4). An inventory of the items seized pursuant to that

search warrant included an Apple Laptop Computer, a Vivitar Camcorder, a USB battery pack, seven rounds of .223 ammunition, and a Savage Arms model 110 rifle located in Plaintiff's vehicle (Doc. No. 19-1 at 5). Based on that evidence, Detective Barkley sought and was granted an arrest warrant for Possession of a Firearm by a Felon. (Doc. No. 19-4). The cases against Plaintiff were further bolstered when the search of Plaintiff's electronic devices located the nude image taken while Ms. Buckner was unconscious, messages threatening to disseminate that image, internet searches for "Savage Arms Model 110 ammo" and "do you have to have a gun permit to buy ammo in NC," and a photo appearing to be the same rifle found in Plaintiff's vehicle taken sometime prior to its discovery by Detective Barkley. (Doc. No. 19-5). The search also revealed Plaintiff had visited a Yahoo Answers Website titled "i [sic] have a savage model 110c .270 whats (sic) the best ammunition for this rifle?" (Id.). A grand jury subsequently returned true bills of indictment charging Plaintiff with Felony Secret Peeping, Cyberstalking and Felon in Possession of a Firearm. (Doc. No. 19-6). The Secret Peeping and Cyberstalking charges were later voluntarily dismissed after the District Attorney's Office was unable to locate the charging witness, but the State proceeded to trial on the charge of Felon in Possession of a Firearm. (Doc. No. 19-7).

Prior to trial, representing himself, Plaintiff moved to suppress evidence gained through the search warrant on the purported basis the warrant was not executed in a timely manner and was "invalid under the fruit of the poisonous tree doctrine." (Doc. No. 19-8). The trial court denied that motion, and the search warrant, cell phone, photos of Plaintiff's car with the rifle, the rifle itself, photos of the vehicle console with five rounds of ammunition, and various other photos were admitted into evidence. (Doc. No. 19-9; Doc. No. 19-10). The trial ended in a mistrial after the jury was unable to reach a unanimous verdict. (Doc. No. 19-11). The State ultimately elected to dismiss the case, writing on the dismissal form: "Though the State believes it can prove all

3

elements beyond a reasonable doubt, witness availability and trial backlog make it improbable that Defendant's case will be reached in the following weeks. Defendant has been incarcerated for 14.5 months, sufficiently serving the ends of justice." (Doc. No. 19-12).

Plaintiff[1] then filed this action against the City of Asheville ("the City"), Detective Barkley, and two unnamed Defendants[2] on November 2, 2020. (Id.). Plaintiff's Complaint sets forth seven causes of action. (Doc. No. 19-13 at 5; Doc. No. 1 at ¶¶ 44–77). As to Detective Barkley, Plaintiff alleges that (1) Detective Barkley performed an illegal search and seizure in violation of the Fourth Amendment; (2) Detective Barkley violated Plaintiff's right to due process under the Fourteenth Amendment; and (3) Detective Barkley was involved in a civil conspiracy with the City against Plaintiff. (Id.). As to the City, Plaintiff claims that (1) the City is vicariously liable for Detective Barkley's actions under 42 U.S.C. § 1983 based on municipal and supervisory liability; (2) the City is liable under North Carolina law for negligent hiring and retention; (3) the City is liable under North Carolina law through the doctrine of respondeat superior; and (4) the City is liable under North Carolina law for malicious prosecution. (Id.).

Defendants filed their motion to dismiss/and or motion for summary judgment on May 3, 2022.[3] (Doc. No. 19). On May 19, 2022, Plaintiff filed his pro se response. (Doc. No. 24).

---

[1] In an unrelated action in March 2022, Plaintiff was convicted in Buncombe County Superior Court of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon with intent to kill, discharging a weapon into occupied property, and discharging a weapon into occupied property inflicting serious bodily injury. Plaintiff is currently serving a sentence of 290 to 372 months.

[2] These unnamed Defendants have not since been named by Plaintiff, and no summonses have been issued or served upon additional Defendants. Therefore, the Court will proceed with Plaintiff's case against the City of Asheville and Detective Travis Barkley.

[3] Defendants have attached court records, including the search warrant and the criminal records related to the charges against Plaintiff in state court, and the Court has considered these attached records in adjudicating the motion to dismiss. See (Doc. Nos. 19-1 to 19-12). The Court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., FED. R. EVID. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

4

Defendants filed their Reply on May 27, 2022 (Doc. No. 26), and Plaintiff filed a Surreply on June 9, 2022, (Doc. No. 29).

Defendants have filed a Motion to Dismiss and/or for Summary Judgment, seeking a dismissal of all of Plaintiff's claims. (Doc. No. 19). The motion has been fully briefed and is ripe for disposition.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff.[4] FED. R. CIV. P. 12(b)(6); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations

---

551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Under North Carolina law, arrest and search warrants returned by law enforcement agencies are public records. N.C. GEN. STAT. § 132-1.4(k).

[4] As explained above, Defendants have filed both a motion to dismiss and/or a motion for summary judgment as to various claims by Plaintiff. Because the parties have not engaged in discovery, the Court finds that the summary judgment motion is premature, and the Court will not entertain it.

5

omitted).

While the Court may construe Plaintiff's complaint liberally because he is a pro se plaintiff, the complaint must still allege "'facts sufficient to state all the elements of [his] claim'" to survive a motion to dismiss. Williams v. Wal-Mart Stores East, L.P., No. 5:18-CV-33-BO, 2018 WL 3341181, at *2 (E.D.N.C. July 6, 2018) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

### III. DISCUSSION

The Court finds that Plaintiff's arrest was based on probable cause, the search challenged by Plaintiff was validly conducted pursuant to a search warrant issued by a neutral magistrate, Defendant Barkley enjoys qualified immunity, Plaintiff has adequate remedies for his North Carolina constitutional claims, and Plaintiff fails to state a claim for malicious prosecution. Furthermore, because Plaintiff has failed to state a claim against Defendant Barkley, the City of Asheville cannot be liable under Monell or the doctrine of respondeat superior.

#### A. Plaintiff's Fourth Amendment Claim

Plaintiff claims that Detective Barkley violated his Fourth Amendment right against unreasonable searches and seizures, alleging that Detective Barkley's application for a search warrant was faulty and that Plaintiff's arrest was unlawful. (Doc. No. 1 at ¶ 43). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent." Rakas v. Illinois, 439 U.S. 128, 143 (1978).

Because Defendant Detective Barkley enjoys qualified immunity as to this claim,

Plaintiff's Fourth Amendment claim will be dismissed. Qualified immunity shields police officers in their individual capacities from liability unless their conduct constitutes a violation of clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818–19 (1982). In determining whether the officer at issue is entitled to qualified immunity, the Court must (1) identify the specific right violated; (2) determine whether the right was clearly established at the time of the alleged violation; and (3) if so, then determine whether a reasonable person in the officer's position would have known that his conduct would violate that right. Taft v. Vines, 70 F.3d 304, 319 (4th Cir. 1995) (Motz, J., dissenting), vacated, 83 F.3d 681, 684 (1996) (en banc) (adopting Motz, J., dissenting opinion).

Police officers are entitled to qualified immunity when they rely on standard operating procedures if that reliance is reasonable. Vizabaras v. Prieber, 761 F.2d 1013 (4th Cir. 1985). Reliance is considered reasonable under qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. Slattery v. Rizzo, 939 F.2d 213 (4th Cir. 1991). Police officers are also entitled to rely on the information supplied to them by other officers—such reliance is presumptively reasonable unless a plaintiff can prove that the reliance is objectively unreasonable. United States v. Welebir, 498 F.2d 346, 350 (4th Cir. 1974); Stearns v. Clarkson, 615 F.3d 1278, 1286 (10th Cir. 2010) (internal citations omitted).

Here, Detective Barkley relied on information supplied by Plaintiff's arresting officers, a practice that is afforded a presumption of reasonableness. Detective Barkley acquired evidence of Plaintiff's wrongdoing, including the complaint from Ms. Buckner, the photograph of Ms. Buckner, a confirmation from the officers that the Facebook account sending threatening messages to Ms. Buckner belonged to Plaintiff, and the exchange between Ms. Buckner and the officers about Plaintiff's firearm. Given the objectively strong connection between Plaintiff and the

7

Case 1:20-cv-00313-MOC-WCM    Document 37    Filed 07/20/22    Page 7 of 13

evidence received by Detective Barkley, as shown through the neutral magistrate's granting of the search warrant, Detective Barkley was reasonable in relying on that evidence to guide his actions. Moreover, Plaintiff has made no allegation that Detective Barkley had any reason to doubt his fellow officers' propensity for truthfulness and has not alleged that Detective Barkley's reliance on the officers' information was objectively unreasonable. Therefore, Detective Barkley is entitled to undisputed qualified immunity and Plaintiff's claims against him must be dismissed.

Second, as to Plaintiff's arrest, for him to establish that his arrest was, in fact, an unreasonable seizure under the Fourth Amendment, he must demonstrate that his arrest was without probable cause. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). The Fourth Circuit has "consistently explained that probable cause has been shown when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." McAfee v. Boczar, 738 F.3d 81, 87 (4th Cir. 2013) (internal refs omitted). Obtaining an arrest warrant from a neutral magistrate prior to an arrest is a strong factor in finding that an arrest was objectively reasonable. Messerschmidt v. Millender, 565 U.S. 535, 546 (2012); McAfee, 738 F.3d at 86–87.

Here, Plaintiff was arrested and charged originally by officers not party to this action after those officers developed sufficient probable cause to convince them that Plaintiff had violated the law. Then, Detective Barkley applied for and received a search warrant and later an arrest warrant pursuant to that probable cause. Detective Barkley was, again, entitled to rely upon the information given him by his fellow officers regarding Plaintiff's behavior, and moreover, a neutral magistrate agreed that the information Detective Barkley possessed was sufficient for a search warrant. After executing the duly granted search warrant, Detective Barkley recovered a rifle that was in a car

known and evidenced to be owned by Plaintiff, and further, recovered internet searches that connected Plaintiff's electronic devices to that very weapon. Given that Plaintiff was a felon not permitted to possess a firearm, Detective Barkley then applied for and received an arrest warrant from a neutral magistrate. None of Detective Barkley's actions remotely lean toward a lack of probable cause. For these reasons, the Court will grant the motion to dismiss Plaintiff's Fourth Amendment claim.

### B. Plaintiff's Fourteenth Amendment Claim

Plaintiff also alleges that Defendants deprived him of due process in violation of his Fourteenth Amendment rights. (Doc. No. 1 at ¶ 43). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972).

Plaintiff does not allege sufficient facts to state a Fourteenth Amendment due process claim. Plaintiff does not allege that the procedure through which he defended himself was defective. Plaintiff seems to allege that part of his deprivation of due process was a result of the officers' failure to arrest his roommate for assault. Plaintiff, however, has no constitutional right to have another person arrested. Town of Castle Rock, Colo. v. Gonzalez, 545 U.S. 748, 768–69 (2005). Moreover, Plaintiff's claim that the rifle found in his car was "planted" by police officers is insufficient to state a due process claim, because Plaintiff was not precluded from exercising his right to due process to bring this action based on that claim. For the reasons stated herein, the Court will dismiss Plaintiff's Fourteenth Amendment due process claim.

### C. Plaintiff's Civil Conspiracy Claim

Plaintiff claims that Detective Barkley and the City engaged in a civil conspiracy to deprive him of his constitutional rights. (Doc. No. 1 at ¶¶ 35, 38). To survive a Rule 12(b)(6) challenge on civil conspiracy under § 1983, Plaintiff must have sufficiently alleged facts to support his claims that Detective Barkley "acted jointly in concert [with the City] and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 576 n.6 (4th Cir. 1992). An agreement between co-conspirators to deprive a plaintiff of his rights is an essential element of conspiracy. Ballinger v. N.C. Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987). A general allegation that Defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an agreement, fails to state a conspiracy claim pursuant to § 1983. See Wiggins v. 11 Kew Garden Court, 497 F. App'x 262, 264 (4th Cir. 2012).

Here, Plaintiff has not met his burden to provide sufficient facts to infer a conspiracy between Defendants. Plaintiff states that "Defendants agreed to violate [Plaintiff's] rights" and "[D]efendants made an agreement to attempt to cover up the assault committed against [P]laintiff by his roommate." (Doc. No. 1 at ¶¶ 56–57). Elsewhere in his Complaint, Plaintiff claims that "Defendants conspired with unnamed officers who were not listed in the chain of custody but [were] seen by neighbors who furnished sworn statements [about] the unnamed officers who planted a rifle into the trunk of [Plaintiff's] alleged vehicle." (Id. at ¶ 35). He goes on to state that Defendants "were engaged in a joint venture and formed an agreement to violate [P]laintiff's rights." (Id. at ¶ 38). He attempts to supplant these claims by stating that the "individual officers and detective and the unidentified officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events." (Id.).

Nowhere in his Complaint does Plaintiff actually identify the "unnamed officers," nor does he provide any sort of factual basis on which the Court may infer that a conspiracy was afoot. The Court cannot infer a conspiracy with "unnamed" individuals without knowing more about their identities. Those individuals may or may not exist, and the Court is not able to determine their existence without identification and further information. As to any other potential bases for Plaintiff's claim, Plaintiff does not allege that he witnessed some conversation between the officers amounting to a conspiracy or that he possessed any indication of a conspiracy outside of observing the officers performing routine duties like collectively investigating his and Ms. Buckner's claims or arresting Plaintiff based on probable cause. Plaintiff claims that there exists some "sworn statements" by "neighbors" who supposedly witnessed officers "plant[ing] a rifle into the trunk" of Plaintiff's car," but he took no pains to explain to whom the statements were sworn, to identify the neighbors who gave the statements, or to produce those statements either at his trial or before the Court. In sum, Plaintiff has failed to state a claim for conspiracy, and the Court will therefore dismiss this claim.

### D. Plaintiff's North Carolina Constitutional Claims

Plaintiff next argues that Detective Barkley and the City violated his rights under the North Carolina Constitution, sections 19 and 20. (Doc. No. 1 at ¶ 60). For Plaintiff to sufficiently allege a direct constitutional claim against Defendants under the North Carolina Constitution, he must have also claimed that no adequate state remedy exists to provide relief for the injury. See Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992) (holding that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution"). In essence, Plaintiff must not have had "an opportunity to enter the courthouse door" to remedy his alleged injury and he must have argued as much in his Complaint

to be able to invoke the North Carolina Constitution. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 340 (2009); Edwards v. City of Concord, 827 F. Supp. 2d 517, 520 (M.D.N.C. 2011).

Here, Plaintiff has not alleged the absence of a state remedy. Indeed, under North Carolina law, Plaintiff had an available state law remedy precluding any usage of the North Carolina Constitution directly. See N.C. GEN. STAT. § 99D-1; Edwards, 827 F. Supp. 2d at 524. Thus, the Court will dismiss Plaintiff's claims arising under the North Carolina Constitution.

### E. Plaintiff's Claims Against the City for Supervisory and Municipal Liability, Respondeat Superior, and Negligent Hiring and Retention

Plaintiff claims that the City is liable for Detective Barkley's actions pursuant to § 1983 on a theory of either supervisory or municipal liability. Because the Court has found that Plaintiff has failed to state a claim against Defendant Barkley, it follows that Plaintiff's claims against Defendant City of Asheville likewise fail, regardless of whether the claims are based on supervisory liability or respondeat superior. In any event, Plaintiff fails to state a claim for liability under Monell. See Monell v. Dep't of Soc. Servcs., 436 U.S. 658 (1978).

### F. Malicious Prosecution

Plaintiff's final cause of action alleges malicious prosecution solely against the City. Plaintiff does not specify whether this claim is brought pursuant to § 1983 or as a common law tort, but either claim fails. Plaintiff has simply failed to state a cognizable claim against Defendants for malicious prosecution. And, if the Court assumes Plaintiff intended to sue the City for malicious prosecution under § 1983, then Plaintiff's claims must be dismissed for the same reasons his other § 1983 claims are being dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) Defendants' Motion to Dismiss the Complaint and/or for Summary Judgment, (Doc. No. 19), is **GRANTED**, and this action is **DISMISSED** with prejudice.

(2) Defendants' Motion to Strike Plaintiff's Surreply, (Doc. No. 32), is **DENIED** as **MOOT**.

(3) Plaintiff's Motion for Leave to Amend, (Doc. No. 35), is **DENIED** as **MOOT**.

(4) The Clerk is directed to dismiss this action.

Max O. Cogburn Jr
United States District Judge